# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JENNIFER M. PROBST, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff | ) ) | |
| vs. | ) ) | CASE NO. 1:22-cv-1986 |
| ELI LILLY AND COMPANY, | ) ) | **CLASS ACTION COMPLAINT** |
| Defendant | ) ) | |

## *PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES*

Plaintiff Jennifer M. Probst (hereinafter "Probst"), individually and on behalf of others similarly situated, by her counsel, for her cause of action against Defendant Eli Lilly and Company (hereinafter "Eli Lilly"), states as follows:

## I. FACTUAL ALLEGATIONS

### A. The Parties

1. Probst resides in Oshkosh, Wisconsin. Probst is a citizen of the State of Wisconsin.

2. Probst was employed by Eli Lilly as a Senior Sales Representative from approximately June 10, 2011 until the date of Probst's voluntary resignation in June 2022. Probst primarily worked for Eli Lilly by calling on customers in its Wisconsin sales territory. Probst did also work for Eli Lilly each year in the State of Indiana, particularly as Eli Lilly treated its Indianapolis, Indiana headquarters as Probst's own business address. Eli Lilly treated Probst's

work office address[1] as "Lilly USA, LLC, Lilly Corporate Center, Indianapolis, IN 46285 U.S.A." and provided Probst with a work cell phone with an Indianapolis phone number

3.       Eli Lilly was formed under the incorporation laws of the State of Indiana. Eli Lilly's headquarters sit in the State of Indiana. Eli Lilly is a citizen of the State of Indiana.

4.       Eli Lilly employs many Rule 23 putative class members in the United States, however, a very large percentage of putative class members work for Eli Lilly in the State of Indiana and are citizens of the State of Indiana. Based upon investigation, thousands (certainly more than 100) of employees were subjected to wage deductions Eli Lilly called "Vacation Purchase" or some similar phrase in the same way and for the same reasons as Probst was subjected to "Vacation Purchase" wage deductions.  Just as is true of Probst, these thousands of coworkers were subjected to "Vacation Purchase" wage deductions without first having signed a wage assignment which fully complied with I.C. 22-2-6-2. Eli Lilly has been consistently taking the "Vacation Purchase" wage deductions from Rule 23 class members' wages since October 1, 2020 and earlier.

**B.  Rule 23 and Individual Allegations Based Upon "Vacation Purchase" Wage Deductions**

5.       As related to its vacation (Paid Time Off) policies and programs, Eli Lilly subjected Probst to illegal wage deductions in a wage deduction category it called "Vacation Purchase."  As a specific example, in calendar year 2022, Eli Lilly deducted from Probst the sum of $64.12 in the wage deduction category it called "Vacation Purchase." Eli Lilly deducted similar sums from Probst's wages in the category of "Vacation Purchase" during calendar years 2020, 2021 and 2022. Eli Lilly deducted this same "Vacation Purchase" amount from every one

---

[1]Eli Lilly provided business cards for Probst with her Indianapolis work address.

of Probst's pay checks, which were paid every two weeks.

6.      In the same or similar manner, Eli Lilly subjected thousands of Probst's fellow Eli Lilly employees to the same type of illegal wage deductions in the category Eli Lilly called "Vacation Purchase." Eli Lilly was deducting "Vacation Purchase" sums similar to Probst's "Vacation Purchase" wage deduction from Rule 23 class members' pay checks each paycheck. These deductions were taken as "Vacation Purchase" wage deductions from the wages of each class member participating in Eli Lilly's "Vacation Purchase" program. Cumulatively, based upon information and belief, Probst believes Eli Lilly deducted millions of dollars from Rule 23 class members from October 1, 2020 to the present. Particularly with the potential for liquidated damages under I.C. 22-2-5-2, Probst believes it is the case that there is significantly greater than $5,000,000.00 in controversy in the class action case.

7.      As described above, a substantial number of Rule 23 class members are citizens of states other than Indiana, with many living as citizens of the states across the United States. As an example, Probst is a citizen of the State of Wisconsin.

8.      Probst is specifically alleging that Eli Lilly has taken illegal deductions from her wages and similarly from the wages of Rule 23 class members in violation of the Indiana Wage Assignment Statute, I.C. 22-2-6-2. In so doing, Eli Lilly has failed and refused to pay Probst and Rule 23 class members their wages in full in each and every week in 2020, 2021 and 2022 Eli Lilly took one of its "Vacation Purchase" pay roll deductions from Probst and fellow Rule 23 class members' wages.

9.      Eli Lilly had and has no legal authority to deduct a "Vacation Purchase" from Probst's wages or the wages of any other Rule 23 class member, particularly as Eli Lilly did not

3

fully comply with I.C. 22-2-6-2(a), by first obtaining from Probst and/or each other Rule 23 class member a signed, written authority which fully complied I.C. 22-2-6-2 (for example, Eli Lilly did not have Probst or the Rule 23 class members sign wage assignments that told them the "Vacation Purchase" wage assignment could be revoked at any time if the signer did so in writing to the employer) and would allow Eli Lilly to deduct amounts in the "Vacation Purchase" category.

10.     Moreover, as will be developed more in discovery, Probst alleges and asserts that Eli Lilly's "Vacation Purchase" program is not a bona fide IRS Code Section 125 plan (cafeteria plan), nor is the "Vacation Purchase" program a legitimate reason for any deduction under I.C. 22-2-6-2(b).

11.     Eli Lilly intentionally and knowingly violated Probst's rights to earned wages and Rule 23 class members' rights to earned wages through Eli Lilly's unlawful wage deduction practice.

12.     Additionally, based upon information, belief and early investigation, Eli Lilly deceived Probst and putative class members about the "Vacation Purchase" program altogether. Despite obvious fiduciary duties and obligations to do so, Eli Lilly has not set up any kind of trust account or any type of "Vacation Purchase" fund into which it deposits and/or invests "Vacation Purchase" wage deductions taken from employees' wages. No trustee safeguards or administers the "Vacation Purchase" monies for the benefit of participating employees. Eli Lilly did not and does not pay "Vacation Purchase" benefits to participating employees from any "Vacation Purchase" trust fund, account or under any "Vacation Purchase" benefit plan. Instead, Eli Lilly keeps the "Vacation Purchase" wage deductions for itself, interest-free. Based upon

information and belief, Eli Lilly is simply keeping the "Vacation Purchase" wage deduction amounts in its general corporate accounts and is making use of that money for its own benefit and purposes, and to the detriment of Probst and putative class members.  Eli Lilly does not segregate or separate the "Vacation Purchase" monies and preserve those monies for the benefit of participating employees. Eli Lilly does not invest the "Vacation Purchase" monies, nor does it place the money in any interest bearing account.

13.     Eli Lilly intentionally and knowingly violated Probst's rights to "Vacation Purchase" funds and Rule 23 class members' rights to "Vacation Purchase" funds through Eli Lilly's breach of its duties and its unauthorized taking of interest-free "Vacation Purchase" funds for its own purposes rather than for the benefit of Probst and putative class members.

### C. Rule 23 and Individual Allegations Based Upon "Fleet" Wage Deductions

14.     Eli Lilly required Probst and all similarly situated sales representatives to drive a company-leased vehicle for work. Tied to that requirement, Eli Lilly subjected Probst and all similarly situated sales representative to illegal wage deductions in a post-tax wage deduction category the company titled "Fleet" (in Probst's case the deduction was called "Fleet Basic").  As a specific example, in her pay stub dated March 25, 2022, Eli Lilly deducted from Probst the sum of $70.00 in the post-tax wage deduction category it called "Fleet Basic." Eli Lilly deducted similar sums from Probst's wages in the category of "Fleet" every two week pay period during calendar years 2020, 2021 and 2022.

15.     In the same or similar manner, Eli Lilly subjected thousands of Probst's fellow Eli Lilly sales representatives to the same type of illegal wage deductions in the category Eli Lilly called "Fleet." Eli Lilly was deducting "Fleet" sums similar to Probst's "Fleet Basic" wage

deduction from Rule 23 class members' pay checks each paycheck. These deductions were taken by Eli Lilly to cover a portion of Eli Lilly's own costs of leasing company vehicles, to Eli Lilly's enrichment and to its sales representatives' detriment. Cumulatively, based upon information and belief, Probst believes Eli Lilly deducted millions of dollars from Rule 23 class members from October 10, 2020 to the present. Particularly with the potential for liquidated damages under I.C. 22-2-5-2, Probst believes it is the case that there is significantly greater than $5,000,000.00 in controversy in the class action case regarding the "Fleet" deductions alone.

16.     As described above, a substantial number of Rule 23 class members are citizens of states other than Indiana, with many living as citizens of the states across the United States. As an example, Probst is a citizen of the State of Wisconsin.

17.     Probst is specifically alleging that Eli Lilly has taken illegal deductions from her wages and similarly from the wages of Rule 23 class members in violation of the Indiana Wage Assignment Statute, I.C. 22-2-6-2. In so doing, Eli Lilly has failed and refused to pay Probst and Rule 23 class members their wages in full in each and every week in 2020, 2021 and 2022 Eli Lilly took one of its "Fleet" pay roll deductions from Probst and fellow Rule 23 class members' wages.

18.     Eli Lilly had and has no legal authority to deduct a "Vacation Purchase" from Probst's wages or the wages of any other Rule 23 class member, particularly as Eli Lilly did not fully comply with I.C. 22-2-6-2. Based upon information and belief, Probst alleges that Eli Lilly violated I.C. 22-2-6-2(a), by failing to first obtain from Probst and/or each other Rule 23 class member a signed, written authority which fully complied I.C. 22-2-6-2 (for example, Eli Lilly did not have Probst or the Rule 23 class members sign wage assignments that told them the "Fleet"

6

wage assignment could be revoked at any time if the signer did so in writing to the employer) and would allow Eli Lilly to deduct amounts in the "Fleet" category. Moreover, Eli Lilly's illegal wage deductions to take kickbacks that covered a portion of Eli Lilly's own cost to lease company vehicles is not a permissible reason to take a wage deduction under I.C. 22-2-6-2(b).

19.     Additionally, the amounts Eli Lilly illegally deducts from its sales representatives' wages equals nearly Two Thousand Dollars per year per sales representatives. The sums Eli Lilly deducts grossly exceed the actual dollar amounts Probst and her fellow sales representatives would pay to the Internal Revenue Service ("IRS") if Eli Lilly simply complied with the IRS Code and reported its sales representatives' imputed income from personal miles driven in company-leased vehicles under the IRS's Annual Lease Value method. Based upon information and belief, Eli Lilly is taking and keeping the "Fleet" wage deductions from its sales representatives in amounts equaling 500% or greater in excess of the tax liability those same sales representatives would owe if Eli Lilly simply complied with the IRS code and reported imputed income for personal use miles driven in company-leased vehicles.

20.      Eli Lilly intentionally and knowingly violated Probst's rights to earned wages and Rule 23 class members' rights to earned wages through Eli Lilly's unlawful wage deduction practice.

21.      Eli Lilly intentionally and knowingly violated Probst's rights to "Fleet" funds and Rule 23 class members' rights to "Fleet" funds through Eli Lilly's breach of its duties and its unauthorized taking of interest-free "Fleet" funds for its own purposes and own enrichment rather than for the benefit of Probst and putative class members.

## II.  CLASS ACTION ALLEGATIONS

### A.  Class Action Allegations Based Upon "Vacation Purchase" Wage Deductions

22.     As described above, Probst believes and asserts that thousands of Eli Lilly employees and former employees who are Eli Lilly participants in the "Vacation Purchase" program have been similarly subjected to Eli Lilly's unlawful "Vacation Purchase" wage deductions and harmed by Eli Lilly's "Vacation Purchase" program.

23.     By way of this Complaint, Probst seeks for herself and for all other similarly situated employees and former employees of Eli Lilly throughout the United States, all unpaid wages (illegally deducted wages in the "Vacation Purchase" category), all "Vacation Purchase" funds, compensatory damages, punitive damages, and any and all liquidated damages owed to each.  Additionally, Probst seeks payment of her reasonable attorney's fees, costs and expenses.

24.     As an Indiana employer and Indiana company, Eli Lilly is liable for payment of unpaid wages, liquidated damages, attorney's fees and costs under the Indiana Wage Payment Statute owed to Probst and other members of the class regardless of where Probst and/or each member of the class physically worked.  See *Huff v. Biomet, Inc.,* 654 N.E.2d 830, 834–35 (Ind. Ct. App. 1995)*,* abrogated on other grounds by *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699 (Ind. 2002) ("The Wage Payment Statute does not impose any restriction on the employee but instead the plain language of the statute dictates that the applicability of the Wage Payment Statute rests solely upon whether the employer is doing business in Indiana. *See* I.C. 22–2–5–1(a). Because Biomet was a corporation doing business in Indiana, we determine that it was subject to the Wage Payment Statute.").

25.     With respect to FRCP 23(b)(3) class action claims under the Indiana Wage Payment Statute, Probst will serve as class representative over a proposed class.  The class will be as follows:

> Probst will serve as class representative for the class-wide claims brought under the Indiana Wage Payment Statute and Indiana common law. This action is filed as a class action pursuant to Rule 23 of the Indiana Rules of Trial Procedure on behalf of Probst and on behalf of all eligible Eli Lilly employees who participated in the Eli Lilly "Vacation Purchase" program and were subjected to one or more "Vacation Purchase" wage deductions from October 7, 2020 to present. By virtue of the class action, Probst represents the identical and/or similar interests of former and current coworkers denied wages and/or "Vacation Purchase" funds under the same circumstances.

26.     Based upon information and belief, the number of potential class members is believed to be more than several thousand individuals, however, the actual number of Eli Lilly's current and former employees who will be members of this class action is so great (numerosity) that joinder of all members is impractical.  Instead, Probst will pursue discovery to obtain the names of the other current and former Eli Lilly employees, to provide notice of the class action and to offer the opt out opportunity.

27.     Particularly with the types of "Vacation Purchase" wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire class.

28.     Probst's claims are typical of the claims of the whole class of current and former Eli Lilly employees who participated in the "Vacation Purchase" program and were harmed by Eli Lilly's illegal wage practices and illegal and/or inequitable practices.

29.     Probst will act to fairly and adequately protect the interests of the entire Rule 23 class of current and former Eli Lilly employees were subjected to one or more "Vacation Purchase" wage deductions.

30.     A class action is superior to other available means for the fair and efficient prosecution of these wage claims against Eli Lilly.  For example, to prove Eli Lilly's illegal wage deduction and "Vacation Purchase" practices, Probst and other members of this class would seek in discovery records about all similarly situated current and former Eli Lilly employees who were similarly denied earned wages and monies due to unlawful "Vacation Purchase" wage deductions. Individual lawsuits by the members of the collective group/class could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds.  Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

31.     A determination regarding the "similarness" of those able to participate in the class action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages.  Particularly with the type of Indiana statutory wage violations and Indiana claims at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under Indiana law, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

32.     A class action will result in an orderly and expeditious administration of the class members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

### B.  Class Action Allegations Based Upon "Fleet " Wage Deductions

33.     As described above, there is significant overlap, along with factual and legal similarities between the class of victims of Eli Lilly's "Vacation Purchase" wage deductions that

Probst seeks to represent and the class of victims of Eli Lilly's "Fleet" wage deductions that Probst seeks to represent. However, the classes are not identical. Based upon information and belief, Probst will represent a class that is largely (if not wholly) comprised of sales representatives who were required to drive company-leased vehicles and who were subjected to illegal deductions titled "Fleet" for a part of Eli Lilly's costs for the company car.

34.     Probst believes and asserts that thousands of Eli Lilly employees and former employees who are Eli Lilly victims of the "Fleet" post-tax wage deductions have been similarly harmed.

35.     By way of this Complaint, Probst seeks for herself and for all other similarly situated employees and former employees of Eli Lilly throughout the United States, all unpaid wages (illegally deducted wages in the "Fleet" category), all "Fleet" funds, compensatory damages, punitive damages, and any and all liquidated damages owed to each.  Additionally, Probst seeks payment of her reasonable attorney's fees, costs and expenses.

36.     As an Indiana employer and Indiana company, Eli Lilly is liable for payment of unpaid wages, liquidated damages, attorney's fees and costs under the Indiana Wage Payment Statute owed to Probst and other members of the class regardless of where Probst and/or each member of the class physically worked.  See *Huff v. Biomet, Inc.,* 654 N.E.2d 830, 834–35 (Ind. Ct. App. 1995)*,* abrogated on other grounds by *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699 (Ind. 2002) ("The Wage Payment Statute does not impose any restriction on the employee but instead the plain language of the statute dictates that the applicability of the Wage Payment Statute rests solely upon whether the employer is doing business in

Indiana. *See* I.C. 22–2–5–1(a). Because Biomet was a corporation doing business in Indiana, we determine that it was subject to the Wage Payment Statute.").

37.     With respect to FRCP 23(b)(3) class action claims under the Indiana Wage Payment Statute, Probst will serve as class representative over a proposed class.  The class will be as follows:

> Probst will serve as class representative for the class-wide claims brought under the Indiana Wage Payment Statute and Indiana common law. This action is filed as a class action pursuant to Rule 23 of the Indiana Rules of Trial Procedure on behalf of Probst and on behalf of all eligible Eli Lilly employees who were subjected to one or more "Fleet" wage deductions from October 10, 2020 to present. By virtue of the class action, Probst represents the identical and/or similar interests of former and current coworkers denied wages and/or "Fleet" funds under the same circumstances.

38.     Based upon information and belief, the number of potential class members is believed to be more than several thousand individuals, however, the actual number of Eli Lilly's current and former employees who will be members of this class action is so great (numerosity) that joinder of all members is impractical.  Instead, Probst will pursue discovery to obtain the names of the other current and former Eli Lilly employees, to provide notice of the class action and to offer the opt out opportunity.

39.     Particularly with the types of "Fleet" deduction wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire class.

40.     Probst's claims are typical of the claims of the whole class of current and former Eli Lilly employees who were subjected to one or more "Fleet" wage deductions and were harmed by Eli Lilly's illegal wage practices and illegal and/or inequitable practices.

41.     Probst will act to fairly and adequately protect the interests of the entire Rule 23 class of current and former Eli Lilly employees were subjected to one or more "Fleet" wage deductions.

42.     A class action is superior to other available means for the fair and efficient prosecution of these wage claims against Eli Lilly.  For example, to prove Eli Lilly's illegal "Fleet" wage deduction practices, Probst and other members of this class would seek in discovery records about all similarly situated current and former Eli Lilly employees who were similarly denied earned wages and monies due to unlawful "Fleet" wage deductions. Individual lawsuits by the members of the collective group/class could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds.  Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

43.     A determination regarding the "similarness" of those able to participate in the class action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages.  Particularly with the type of Indiana statutory wage violations and Indiana claims at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under Indiana law, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

44.     A class action will result in an orderly and expeditious administration of the class members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

13

### III.  STATEMENT OF CLAIMS

**A.  Class Action Claims Under Indiana Wage Payment Statute Based Upon "Vacation Purchase" and "Fleet" Wage Deductions**

45.     Probst hereby incorporates by reference the material allegations stated in rhetorical paragraphs 1 through 44 of the Complaint for Damages as set forth herein.

46.     Eli Lilly subjected Probst and all Eli Lilly participants in the "Vacation Purchase" program to illegal wage deductions that violated the mandatory requirements of the Indiana Wage Assignment Statute.  See I.C. 22-2-6-2.

47.     Similarly, Eli Lilly subjected Probst and all Eli Lilly sales representatives to illegal "Fleet" wage deductions that violated the mandatory requirements of the Indiana Wage Assignment Statute.  See I.C. 22-2-6-2.

48.     Probst is specifically alleging that Eli Lilly has taken illegal deductions in violation of the Indiana Wage Assignment Statute, I.C. 22-2-6-2, and in so doing, Eli Lilly has failed and refused to pay Probst and each and every other similarly situated Eli Lilly participant in the "Vacation Purchase" program and/or every other sales representative subjected to one or more illegal "Fleet" wage deduction her wages in full each and every pay period Eli Lilly took a "Vacation Purchase" and/or "Fleet" wage deduction from an employee.

49.     Every Eli Lilly participant in the "Vacation Purchase" program was harmed in the exact same way, regardless of where the employee worked for Eli Lilly in the United States and regardless of whether the employee was paid on a salary or on an hourly-paid basis.  Moreover, all of the illegal conduct, the wage deductions, have been occurring in the State of Indiana.

50.     Similarly, every Eli Lilly sales representative subjected to one or more "Fleet" wage deductions was harmed in the exact same way, regardless of where the employee worked

for Eli Lilly in the United States and regardless of whether the employee was paid on a salary or

on an hourly-paid basis.  Moreover, all of the illegal conduct, the wage deductions, have been

occurring in the State of Indiana.

51.     Eli Lilly has and had no legal authority to take any of the wage deductions at issue

in this class action lawsuit, because Eli Lilly did not have valid, signed, written wage

assignments from any class member which complied with all of the mandatory requirements of

the Indiana Wage Assignment Statute, I.C. 22-2-6-2, which is necessary to allow Eli Lilly to

legally take certain types of deductions from its employees' wages.

52.     For purposes of this class action lawsuit, Probst is similarly situated to all Eli Lilly

participants in the "Vacation Purchase" program who were subjected to one or more unlawful

wage deduction in the category Eli Lilly called "Vacation Purchase" and pursuant to Eli Lilly's

company-wide "Vacation Purchase" program.

53.     Similarly, for purposes of this class action lawsuit, Probst is similarly situated to

all Eli Lilly sales representatives subjected to one or more "Fleet" wage deductions.

54.     At all times relevant to this lawsuit, Eli Lilly did not have a wage assignment from

Eli Lilly participants in the "Vacation Purchase" program that was: "(A) in writing; (B) signed by

the employee personally; (C) by its terms revocable at any time by the employee upon written

notice to the employer; and (D) agreed to in writing by the employer."  See I.C. 22-2-6-2(a)(1).

Moreover, Eli Lilly was not taking the "Vacation Purchase" wage deduction from Probst and all

putative class members for a reason that was permitted under I.C. 22-2-6-2(b).

55.     Similarly, at all times relevant to this lawsuit, Eli Lilly did not have a wage

assignment from Eli Lilly sales representatives subjected to the "Fleet" wage deductions that

was: "(A) in writing; (B) signed by the employee personally; (C) by its terms revocable at any time by the employee upon written notice to the employer; and (D) agreed to in writing by the employer." See I.C. 22-2-6-2(a)(1). Moreover, Eli Lilly was not taking the "Fleet" wage deduction from Probst and all putative class members for a reason that was permitted under I.C. 22-2-6-2(b).

56.     Probst was an actual victim of Eli Lilly's unlawful wage deductions called "Vacation Purchase" during her employment. Probst was an actual victim of Eli Lilly's unlawful wage deductions called "Fleet" during her employment.

57.     Eli Lilly intentionally and knowingly violated its employees' rights to earned wages through Eli Lilly's illegal wage assignment and wage deduction practices.

58.     Eli Lilly's class-wide, illegal wage deductions constitute intentional, deliberate and bad faith violations of the Indiana Wage Payment Statute that should subject the company to liquidated damages.

59.     In Probst's case, as has been true in the cases of many current and former Eli Lilly participants in the "Vacation Purchase" program, Eli Lilly has failed and refused to make a payment of all accrued wages on the date those wages became due, all in violation of the Indiana Wage Payment Statute.

60.     Similarlly, in Probst's case, as has been true in the cases of many current and former Eli Lilly sales representatives subjected to one or more "Fleet" wage deductions, Eli Lilly has failed and refused to make a payment of all accrued wages on the date those wages became due, all in violation of the Indiana Wage Payment Statute.

61.     Important to this class action complaint, the Indiana Wage Payment Statute

provides specific protections to wage earners which may not be waived or contracted away.

### B. Class Action Claim for Unjust Enrichment Under Indiana Law
### (Pleaded in the Alternative)

62.     Probst hereby incorporates by reference the material allegations stated in

rhetorical paragraphs 1 through 36 of the Complaint for Damages as set forth herein.

63.     Probst and fellow putative class members were in at will employment

relationships with Eli Lilly during the time each was subjected to one or more "Vacation

Purchase" and/or "Fleet" wage deductions. At will employment is a contractual relationship. As

terms and conditions of this contractual at will employment relationship, Eli Lilly represented to

Plaintiffs that it was deducting "Vacation Purchase" sums as part of a purchased additional week

of vacation "benefit" or program. Regarding the "Fleet" wage deductions, Eli Lilly represented to

sales representative employees that issuance of a company-leased vehicle was mandatory as was

subjection to the bi-weekly "Fleet" wage deduction.

64.     As described hereinabove, Eli Lilly knowingly and intentionally made false and/or

misleading representations to Plaintiffs about the "Vacation Purchase" wage deduction program

with the intent to obtain money - here, Plaintiff's "Vacation Purchase" wage deductions or the

monetary value thereof - which were specific dollar amounts and special chattel intended for the

dedicated purposes of paying Plaintiffs' paid vacation for an extra purchased vacation week.

Stated differently, the "Vacation Purchase" funds were entrusted by Plaintiffs to Eli Lilly to apply

to a special purpose, paid vacation time for one additional, purchased vacation week. Rather than

segregate the "Vacation Purchase" funds into a trust account or fund kept for participating

employees' benefit, Eli Lilly wrongfully took possession and kept the "Vacation Purchase" funds

itself and for Eli Lilly's own unauthorized and wrongful purposes. Moreover, Eli Lilly

wrongfully and unjustly enriched itself, for its benefit and to Probst and putative class members'
harm, by retaining "Vacation Purchase" funds that were specifically collected for the intended
purpose of providing paid vacation time and for purchasing one additional week of vacation time.
Based upon information and belief, Eli Lilly converted and enriched itself with "Vacation
Purchase" funds belonging to many other putative class members in the same way. Additionally,
Eli Lilly's conversion of putative class members' "Vacation Purchase" funds permitted Eli Lilly
to enrich itself by 1) taking the money for its own use, interest-free, 2) co-mingling the "Vacation
Purchase" money in its general account(s) and using the money for its own purposes and
expenditures, and 3) in certain cases, simply keeping for itself (and not refunding) "Vacation
Purchase" funds that were never used for the employees' benefit.

65.     Additionally, as described hereinabove, Eli Lilly knowingly and intentionally
made false and/or misleading representations to Plaintiff sales representatives about the monetary
and income values associated with personal miles driven in company-leased vehicles. Eli Lilly's
misrepresentations and its grossly excessive "Fleet" wage deductions were intended to obtain
substantial amounts of money - here, Plaintiff's "Fleet" wage deductions or the monetary value
thereof - which were specific dollar amounts and special chattel intended for the dedicated
purposes of covering tax liability for Plaintiff's imputed income from personal miles driven in
company cars. Stated differently, the "Fleet" funds were entrusted by Plaintiffs to Eli Lilly to
apply to a special purpose, payment of small amounts of added tax liability to cover the
additional income imputed from personal mile usage in company cars. Rather than report
imputed income to the IRS for its sales representatives' personal miles driven in company cars,
Eli Lilly pocketed the "Fleet" wage deductions to its own enrichment and to sales

representatives' detriment. Eli Lilly wrongfully and unjustly enriched itself, for its benefit and to Probst and putative class members' harm, by retaining "Fleet" funds that were specifically collected for the intended purpose of paying tax liability to the IRS related to personal mile usage of company-leased vehicles. Based upon information and belief, Eli Lilly converted and enriched itself with "Fleet" funds belonging to many other putative class members in the same way. Additionally, Eli Lilly's conversion of putative class members' "Fleet" funds permitted Eli Lilly to enrich itself by 1) taking the money for its own use, interest-free, 2) co-mingling the "Fleet" money in its general account(s) and using the money for its own purposes and expenditures, 3) in certain cases, simply keeping for itself (and not refunding) "Vacation Purchase" funds that were never used for the employees' benefit, and 4) enriching itself by generating income that was not reported to the IRS, the Indiana Department or Revenue or reported to the Indiana Department of Revenue for sales tax purposes.

66.     Eli Lilly knowingly, intentionally and unjustly retained for itself significant (believed to be millions of dollars during the covered period of time) sums of "Vacation Purchase" and "Fleet" funds without Probst and putative class members' knowing authorization and to Probst and putative class members' detriment.

67.     Probst and all putative class members relied upon Eli Lilly's promises and its descriptions of the "Vacation Purchase" program and the "Fleet" wage deduction scheme.  Probst and all putative class members' reliance upon Eli Lilly were to their detriment and to Eli Lilly's unjust enrichment and benefit.

68.     Unjust enrichment is a quasi-contractual claim. All acts of unjust enrichment - the unlawful taking and use of the "Vacation Purchase" participants' funds and the unlawful taking

19

and use of the "Fleet" funds - occurred in the State of Indiana, particularly as all of Eli Lilly's acts of unauthorized control of Plaintiffs' "Vacation Purchase" and "Fleet" funds occurred in Indiana and Eli Lilly's retention and control of all "Vacation Purchase" and "Fleet" funds occurred in Indiana.

69.     Allowing Eli Lilly to keep "Vacation Purchase" and "Fleet" funds it took from Probst and all putative class members and promised to use for the Plaintiffs' benefit would be unjust. It would be unjust to allow Eli Lilly to keep the unlawfully retained "Vacation Purchase" and "Fleet" funds, interest and/or investment income without ordering Eli Lilly to make restitution to Probst and all putative class members.

70.     As a direct and proximate result of Eli Lilly's unjust enrichment of itself by taking Probst and all putative class members' "Vacation Purchase" and "Fleet" funds, Plaintiffs are entitled to all equitable damages available under Indiana law, including full restitution of all deducted "Vacation Purchase" and "Fleet" wages and/or funds, plus all available interest, payment of all attorney's fees and costs, and any and all other equitable relief available to the Plaintiffs under Indiana law.

## IV.  PRAYER FOR RELIEF

WHEREFORE, Probst respectfully requests that the Court enter judgment against Eli Lilly and issue all available relief to her and to all eligible members of the Plaintiff Class, including, but not limited to, the following:

1.     All damages available under the Indiana Wage Payment Statute, including all unpaid wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

2.      All unpaid and underpaid wages;

3.      All equitable relief available under Indiana law;

4.      All reasonable attorney's fees and expenses;

5.      Costs;

6.      Prejudgment interest, if available; and

7.      Any and all other relief just and proper in the premises.


Respectfully Submitted,

HASSLER KONDRAS MILLER LLP
100 Cherry St.
Terre Haute, Indiana 47807
(812) 232-9691


By/s/Robert P. Kondras, Jr.
   Robert P. Kondras, Jr.
   Attorney No. 18038-84
   Attorney for Plaintiff
   kondras@hkmlawfirm.com